And we'll hear argument in the final matter today, United States v. Datello, 21-1047. Thank you. Mr. Green. Good morning, your honors. Your honors, decisions under 18 U.S.C. 3582C for sentence reduction or compassionate release are certainly committed to the discretion of the district court. But they're subject to review once the court, as it did here, finds that there are extraordinary and compelling circumstances that could justify relief. The district court is required to engage in a 3553A analysis. And it's here where we're saying that this court's review powers come into play because one of the criteria of review is whether the court either made an erroneous finding or attached undue weight to a particular sentencing factor. And here we made the argument below that the Bureau of Prisons was not – we weren't arguing that the Bureau of Prisons was being deliberately cruel to Mr. Datello or that they were depriving him of his basic needs of food, shelter, and medication. But we were making the argument that he wasn't getting the therapeutic needs that his particular condition, which is behavioral variant frontotemporal dementia, requires. And we cited medical literature on interventions that could – along the lines of encouraging physical activity and social engagement, mental stimulation. The picture that the Bureau of Prison by its own report painted of Mr. Datello's prison experience was a very bleak one where he was – would spend all day in bed, often in his own- But he was getting 24-7 care. Well, yes. He is getting 24-7 care in prison. The family – and this is another aspect of our appeal – the family was hoping to – that they might be able to care for him in the home. And that was proposed in the release plan in the renewed motion. But it's also apparent from the record that the family was not naive about Mr. Datello's condition. It said that – I thought it said that the 24-7 care was not part of the proposed release plan. Well, it was mentioned in an earlier submission at page 99 of the appendix where – And at that time, the family was proposing to care for him in Florida. But they also – we also represented that there was an affordable assisted living facility near his daughter's home in the event that in-home care is no longer an option as his dementia progresses. And I didn't repeat that line in the renewed motion, but it's apparent that the family – and I don't think the government is even disputing this – that the family understood that he had a progressive illness, and it could progress to the point where he needed to be put in a full-time care facility. And it's very likely that they – that that might have to happen. So the – in denying relief here, the court – one of the findings that the court made was that being put in a nursing home wasn't part of the release plan. But we think the record – Wasn't part of the what? The release plan. But it's our contention that it is apparent from the record that the family understood that that might be an inevitable requirement. All right, turn to the 3553 factors. Why don't you turn to that part of the district court's opinion on 3553, where she said the defendant is not entitled to this relief because of the seriousness of his offenses, and because at that time he had served only four years of a richly deserved 14-year sentence. The court did say that, and – Right, that was – Another prominent feature of the court's – another prominent feature of the court's 3553 analysis was the care that – her assessment of the care that Tatello is receiving in the Bureau of Prisons, which we're arguing is woefully inadequate, and the idea that the family's release plan was limited to proposing in-home care when the record shows that the family understood that it might well be necessary for him to go into a nursing home. All right, on the care plan, do you have any response to her stating that the 14-year sentence was richly deserved? I don't dispute that those are all valid 3553A factors. The reason we're asking for a remand is that I don't think that, based on this record, that the court can confidently determine that the – Where is the abuse of discretion? I mean, you start off by saying it's a discretionary decision. Right, the abuse of discretion – When you look at the weighing of the 3553A factors, the four years out of 14, where's the abuse? It's applying too much weight or erroneously determining, or both, that A, Mr. Tatello is receiving adequate care in the BOP, and B – That's really a factual question, though, right, whether he's receiving adequate care? Well, to be sure, but the – So that would be clearly erroneous? Yes, but the other part of it is that – well, we're arguing both are clearly erroneous. The other part that we're saying is clearly erroneous is that the care he's receiving in the BOP is somehow superior to the kind of care that he would be expected to receive under the supervision of his family, because the family understood that he may well have to go into a nursing home, and because the – May I ask you a question? Yes. How am I supposed to make that assessment and override a district court judge's assessment, who had, by the way, the benefit of much more information than I do here? Well, I think the court had the same information. Okay. The – what we're asking the court, this court, to do is to remand for the consideration of the motion. A clear error is founded on the proposition that there is no evidence that supports the factual finding. There's some evidence. I think you already have alluded to it. And on abuse of discretion, you're asking me to – we're asking us to make an assessment based on facts that have been found, and it's a little difficult for me to determine what's better than what. You know, there was a district court judge who was appointed through the same process I was appointed, who was very capable and made a decision. Well, what – What is it founded on? Because we're saying that on this record it was not correct that the family didn't understand that the release plan may have to include a nursing home, and the courts – and from which the court found that the – his prospects on release, the care he would receive upon release, were somehow inferior to what he's receiving in BOP. And we are saying that that's very much the case. I very much appreciate that argument. You've reserved some time for rebuttal. Yes. We'll hear from the government. Ms. Kelly. Mr. Messner is doing double duty today. May it please the court. You can take off your mask if you'd like to. You don't have to. Thank you, Your Honor. My name is Jacqueline Kelly, and I'm appearing today for the United States on this appeal. Judge Seibel's comprehensive decision denying the appellant's motion for compassionate release was well within the bounds of permissible discretion. I don't really think there's a dispute as to the medical condition. And when you look at the dementia, the incontinence, the loss of weight, all these terrible things, what is the point of keeping him in prison? To your first point, Your Honor, you're correct. There's no dispute about the defendant's medical diagnosis and that it is a progressive disease. For that reason, the government conceded that there had been an extraordinary and compelling reason for release stated in the defendant's application. However, that medical condition is part of the balance of 3553A factors here. And at the time that the application was made, as the medical director of the facility, the medical facility where the defendant is currently housed, stated he was still ambulatory, able to feed himself, able to converse. Yes, he had showed a decline in some function, but he still was relatively high functioning in comparison to other inmates in the facility. And there is nothing to prevent a re-application for compassionate release, is that correct, based on the deteriorating condition? Yes, that's exactly right, Your Honor. I think what Ms. Chin was asking is, why doesn't the government transfer the costs of this care, which is expensive, to the family which wants to bear it? Well, I think, Your Honor, we have to look at the application at the snapshot in time that it was presented. And the government, as the court ultimately agreed, looked at the balance of 3553A factors here and the reasons why the court imposed the so-called richly deserved sentence in this case and the defendant's condition altogether. And on balance, the government strongly believed, and the court agreed, that those factors weighed against his release at that time. As Your Honors have noted, nothing in the court's denial prevents the defendant from re-applying and filing another motion for compassionate release based on, for instance- I mean, another year has gone by, but we don't know what his condition is today, I assume. That's correct, Your Honor. We don't have up-to-date information. But that new application would be based on whatever, if there has been a change in the defendant's circumstances, I presume. And the court would then rebalance those factors. And the government, too, would reassess whether the government still believed that compassionate release should be denied by the district court. And he will have served five years instead of four of his 14-year sentence. Yes, he's about at five years now. At the end of this month, he'll have been in custody for five years. So still at less than half of his 14-year sentence in the case. And as I stated, we do not have current information, so I'm not going to surmise that the defendant's condition has worsened because I don't have any information to that effect. But why we're here today is to consider whether Judge Seibel's decision at the time she granted it was a reasonable one. And I think here the 3553A factors altogether provide ample support for the district court's decision. As the district court mentioned in her decision, the defendant was a longtime loyal soldier in the Lucchese crime family. He committed very serious crimes on its behalf, including making efforts to murder someone who betrayed the family, conspiring to deal large quantities of narcotics, and participating in extortionate debt collection. This conviction was his sixth felony and fourth federal conviction. And at the time the application was made, as Judge Pooler noted, he had served about four years on a 14-year sentence. He was also, despite his medical condition, still relatively high-functioning and receiving 24-7 skilled nursing care at the memory disorder unit in a medical facility. So he is not housed in a regular facility, but rather receiving medical care akin to what he would receive in a nursing home. The medical director at the facility reported that the defendant would likely continue to require that 24-7 care. And as Your Honors alluded to, that was not part of the proposed release plan here. Yes, in an earlier application, not the one before the court, the defendant referenced in conjunction with a package that had him living with family members in Florida, not in Staten Island, which is the current proposed release plan, that there may come a time where family care would not be sufficient. That was not part of the release plan before the court. And in any event, the court was well within its discretion to consider the medical care that he was receiving at Devens in the memory disorder unit as being sufficient to provide for his medical treatment. And there's no real dispute on that point here. The therapeutic treatment or therapeutic needs that are referenced in the defendant's reply brief and in argument today regarding exercise, social engagement, disrupted sleep, Judge Seibel referred to those specifically in her order, and this is at 146 in the appendix, saying that there was no reason to think that these issues were a result of any deficiency in medical treatment at the facility rather than as a result of the condition that he has. Which, as we've all agreed, there's no dispute, is a debilitating, declining condition. It's debilitating and progressive. Yes, Your Honor. So it's only going to get worse. That's what progressive means, right? Yes, Your Honor. And there's no dispute on that. But I think here the key is that it's clear from the order and from the whole record before the court, which included multiple rounds of briefing, multiple rounds of evaluations that were ordered by the district court, that Judge Seibel was highly attuned to the defendant's medical condition, to the treatment he was receiving while in custody, as well as to all the other 3553A factors present in this case, a case that she presided over from its inception all the way to trial of the defendant's co-defendants. This is a case that she knows inside and out, including the defendant's role, and the record, including the order but not limited to it, amply shows that there was support for the decision here denying the defendant's motion for compassionate release. Unless Your Honors have further questions. Thank you very much. Thank you. Mr. Green. Yes. Well, we well recognize that there is the right to apply for a renewed compassionate release motion. And this is the first one of these out of a number that I've taken an appeal from. The only one, really. And it's because our contention is that the conditions that Mr. Ditello is undergoing at BOP, even at the time that this appeal was taken, are sufficiently serious, and this notion of him being, spending all day in bed in unhygienic conditions and then pacing his cell at night and other deprivations of stimulation, that presented an urgent need to address it. And what we were seeking was a remand for reconsideration. Thank you very much. What was our decision? That concludes today's arguments on the calendar. I'll ask the Quorum Deputy to adjourn court. Court is adjourned.